[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13354
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 8, 2010
JOHN LEY
ACTING CLERK

D. C. Docket No. 07-00031-CR-WTM-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEON SPENCER PATTERSON,
a.k.a. "Lee,"
a.k.a. "Major,"

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(February 8, 2010)

Before EDMONDSON, BIRCH and WILSON, Circuit Judges.

WILSON, Circuit Judge:

This appeal presents the question of whether it is error for a court to sentence a defendant under a Guidelines calculation of intended loss that is more than double the amount of restitution ordered in the same case. We conclude that the facts of this appeal do not present the plain error that appellant asserts. We also reject appellant's claim of ineffective assistance of counsel because the record is not sufficiently developed and collateral attack is the preferable avenue for such challenges. Therefore, we affirm the judgment of the district court.

Leon Spencer Patterson was sentenced to 80 months after pleading guilty to possessing a counterfeit state security in violation of 18 U.S.C. § 513(a). According to the presentence investigation report (PSI), Patterson participated in a sophisticated conspiracy to provide counterfeit vehicle titles and false Vehicle Identification Numbers (VINs), also known as cloned VINs, for stolen vehicles that were subsequently sold, or restolen in staged thefts to collect insurance proceeds. The PSI determined that the intended loss, based on the fair market value of the stolen vehicles, was $1,199,106.92. The report calculated a restitution amount of $425,770.99, the sum of the loss each identified victim had suffered. At sentencing, Patterson's attorney did not object to the PSI, which the district court adopted, or to the sentence, which included a final restitution order of $410,105.45. "It is the law of this circuit that a failure to object to allegations of fact in a PSI

admits those facts for sentencing purposes." *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006).

I.

Patterson first contends that the district court committed plain error in sentencing him, and moreover, that the district court committed procedural error in calculating his sentence. Where the defendant has failed to raise the issue below, we review for plain error. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). Plain error requires the defendant to show: (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Cotton*, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002). For an error to affect substantial rights, it generally "must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 1778 (1993). Patterson also cites *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007), as proscribing the allegedly improper calculation of his sentence by the district court.

While the plain error standard limits our review, this case presents a useful opportunity to review our circuit's law regarding intended loss, actual loss, and restitution. Discussion of the Sentencing Guidelines is the natural starting point.

3

The amount of financial loss can increase the offense level the Guidelines imposes for a wide variety of fraudulent conduct. If the amount of loss in a case involving counterfeit instruments exceeded $1,000,000, but was less than or equal to $2,500,000, the offense level increases by 16. U.S.S.G. § 2B1.1(b)(1)(I). But if the loss amount was greater than $400,000, and less than or equal to $1,000,000, the offense level increases by only 14. *Id.* § 2B1.1(b)(1)(H). Patterson finds himself caught on this divide. In measuring loss, we generally apply the fair market value of the property taken. *United States v. Machado*, 333 F.3d 1225, 1227 (11th Cir. 2003); U.S.S.G. § 2B1.1 cmt. n.3(C)(i).

The Guidelines commentary goes on to distinguish intended loss from actual loss. Intended loss is the "pecuniary harm that was intended to result from the offense," and actual loss is the "reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(i)–(ii). The "General Rule" is that "loss is the *greater* of actual loss or intended loss." *Id.* § 2B1.1 cmt. n.3(A) (emphasis added); *United States v. Willis*, 560 F.3d 1246, 1250 (11th Cir. 2009) (per curiam) (basing fraud loss on the maximum disbursement limits of FEMA hurricane-relief grants, rather than on funds actually stolen). *See also United States v. Nosrati-Shamloo*, 255 F.3d 1290, 1291–92 (11th Cir. 2001) (per curiam) (basing loss on credit limits of fraudulently obtained credit cards, rather

than on smaller figure of actual fraudulent charges); *United States v. Lane*, 323 F.3d 568, 590 (7th Cir. 2003) ("The determination of intended loss under the Sentencing Guidelines therefore focuses on the *conduct of the defendant* and the objective financial risk to victims caused by that conduct.").

"Although a district court must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines, its reasonable estimate of the intended loss will be upheld on appeal." *United States v. Grant*, 431 F.3d 760, 762 (11th Cir. 2005) (quotation omitted); *see also* U.S.S.G. § 2B1.1 cmt. n.3(C). *Grant* involved a scheme to counterfeit checks by cribbing valid checking account information from stolen photocopies of legitimate checks. We found no error in the district court's basing its calculation of loss on the face value of the photocopied checks, rather than the sum of the funds the defendant actually took. 431 F.3d at 761 & n.2, 765. Put another way, when a sentencing court is determining the proper punishment for a defendant's fraud, the court uses the reasonable mathematical limit of his scheme, rather than his concrete result. A criminal pays the price for the ambition of his acts, not their thoroughness.

To be sure, as we noted in *Grant*, speculation has no place in these calculations. We remind district courts of their obligation to make factual findings sufficient to support the government's claim of loss based on a preponderance of

5

the evidence, when the defendant challenges that claim. *United States v. Gupta*, 572 F.3d 878, 888–89 (11th Cir. 2009); *United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997 ).[1]

Restitution, on the other hand, "must be based on the amount of loss actually caused by the defendant's conduct." *United States v. Liss*, 265 F.3d 1220, 1231 (11th Cir. 2001). Restitution requires the defendant to return property to the owner or else pay him the value of the property. 18 U.S.C. § 3663A(b)(1). While the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A *et seq.*, requires a judge to order restitution to compensate the full amount of each victim's losses, *United States v. Jones*, 289 F.3d 1260, 1265 (11th Cir. 2002) (per curiam), it does not require restitution to match the loss figure used for sentencing. Indeed, the amounts of loss and restitution can and do differ. *See, e.g.*, *United States v. Woodard*, 459 F.3d 1078, 1087–88 (11th Cir. 2006) (per curiam). In a cloned-VIN case that presented substantially the same issue as the instant appeal, the Sixth Circuit found no error in the sentencing court's use of the intended loss when calculating the base offense level, even though that figure was more than double the restitution amount. *United States v. Newsom*, 281 F. App'x 464, 466–67 (6th

---

[1] Even if Patterson's failure to object to the PSI had not admitted the government's facts for his sentencing, we would find no *Booker* error here, because the sentencing court referred to the Guidelines as advisory. *United States v. Woodard*, 459 F.3d 1078, 1088 n.9 (11th Cir. 2006) (per curiam).

Cir. 2008) (unpublished opinion).

Patterson argues that it was plain error for the district court to find that the total loss exceeded $1,000,000. He asserts that the loss should equal the restitution. He asserts that the district court likely would have sentenced him to a shorter term but for this error, and, therefore, the error affected his substantial rights. He appeals to our discretion to recognize the error in the interest of fairness and maintaining the integrity of the proceedings.

We reject these arguments. The district court did not err, much less plainly err, in its application of the Guidelines when sentencing Patterson for the intended loss. Moreover, the district court appears to have calculated the restitution figure with care and in accordance with precedent. Patterson has cited no authority that requires a simple symmetry between loss and restitution, and our cases offer substantial explanations why these figures can diverge.[2]

Additionally, it is not clear that a change in the base offense level would have made a difference at Patterson's sentencing. The district court had already departed downward 40 months from the 120-month statutory maximum, in part

---

[2] This conclusion begs the question of why the numbers for loss and restitution differ in this case. The record offers some clues. Some owners of the stolen cars could not be located. Some of the stolen cars were not recovered. Sometimes valuable vehicles were returned intact to their owners, who incurred no loss. Also, one of Patterson's codefendants had already paid for one of the cars.

because of Patterson's "very significant" cooperation, in the words of the prosecutor. It is not at all obvious from the transcript of the sentencing hearing that the court would have departed further, had the suggested Guidelines range dropped from 135–168 months to 108–135 months as a result of a lower loss figure. For these same reasons, we find that Patterson has failed to identify a procedural error in the calculation of his sentence.

## II.

Our conclusion that Patterson's sentence was correctly calculated necessarily diminishes Patterson's complaint that his attorney was ineffective for failing to object to it. Patterson argues that his trial counsel's performance was deficient because counsel did not (1) adequately review the PSI with him; (2) discuss any potential objections to the PSI; or (3) file any objections to the PSI. Additionally, counsel failed to file a memorandum setting forth any grounds for a downward departure based on the 18 U.S.C. § 3553(a) factors and *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), present any evidence on his behalf at sentencing, or call available character witnesses. He claims that his counsel's actions resulted in a longer sentence.

"We will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor

8

develop a factual record." *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002) (citation omitted). We will however consider those claims on direct appeal "if the record is sufficiently developed. " *Id.* The preferred means for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion "even if the record contains some indication of deficiencies in counsel's performance." *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 1694 (2003). For these reasons, we decline to consider Patterson's ineffective-assistance-of-counsel claim on direct appeal because the record for it is not now sufficiently developed.

In sum, we affirm the judgment of the district court.

**AFFIRMED.**