[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11749

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

AZARI GONZALEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20497-CMA-1

_____

Before JILL PRYOR, KIDD, and DUBINA, Circuit Judges.

PER CURIAM:

Appellant Azari Gonzalez appeals his convictions and total sentence of 130 months' imprisonment with 3 years of supervised release for possession of a firearm and ammunition by a convicted felon, possession with intent to distribute a detectable amount of cocaine and cocaine base, and possession of a firearm in furtherance of a drug trafficking crime. With regard to his convictions, Gonzalez asserts on appeal: (1) that the district court plainly erred by admitting evidence of his refusal to comply with a DNA search warrant and by permitting the jury to draw an adverse inference of guilt based on this evidence in the court's jury instructions; (2) that the district court plainly erred in admitting evidence of contraband that law enforcement found in his vehicle, subsequent to his arrest, and without a search warrant; (3) that cumulative errors deprived him of a fair and just trial; and (4) that the district court abused its discretion in denying his three motions for substitute counsel.

As to sentencing, Gonzalez argues that the district court committed procedural errors, which the government concedes. Gonzalez argues that the district court plainly erred in enhancing his sentencing guideline range for possessing a large capacity magazine that could hold up to 15 rounds of ammunition, plus one in the chamber, and for enhancing his sentence for possessing a firearm in connection with another felony. He also argues that the district court plainly erred in imposing the standard conditions of

supervision in its written judgment without sufficiently orally pronouncing them at sentencing. After reviewing the record and reading the parties' briefs, we affirm Gonzalez's convictions, but we vacate his total sentence and remand for re-sentencing.

## I.

Generally, we review a district court's evidentiary rulings for abuse of discretion. *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002). But when a defendant fails to preserve his challenge to an evidentiary ruling by contemporaneously objecting, we review for plain error. *United States v. Edouard*, 485 F.3d 1324, 1343 (11th Cir. 2007). Additionally, we review the legal correctness of a jury instruction *de novo*, "but defer to the district court on questions of phrasing absent an abuse of discretion." *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000). Where a party did not object to a jury instruction in the district court, we review that instruction for plain error. *Id.*; Fed. R. Crim. P. 30(d), 52(b).

"The Sixth Amendment guarantees a defendant a right to counsel in all criminal prosecutions, as a means of protecting his right to a fair trial." *United States v. Hidalgo*, 7 F.3d 1566, 1569 (11th Cir. 1993). The Sixth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated. *Id.* In addition to counsel's presence at trial, a criminal defendant is entitled to counsel at any "critical stage[]" of the prosecution "where counsel's absence might derogate from the defendant's right to a fair trial." *United States v. Wade*, 388 U.S. 218, 224-27, 87 S. Ct. 1926, 1931-33 (1967) (stating that the denial of a right

to have counsel present when "analyzing . . . the accused's finger-prints, blood sample, clothing, hair, and the like" does not violate the Sixth Amendment because such analyses are not critical stages of the proceedings).

In *Hidalgo*, we explained that "a defendant was not entitled to advice of counsel when asked to give evidence of a physical nature, such as his fingerprints or samples of blood, hair, or clothing." 7 F.3d at 1570. Relying on *Wade*, our court reasoned that because, in those circumstances, "the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts." *Id.* (quotation marks omitted). Similarly, in explaining why "a consent to search situation" is not a critical stage, we explained that "[t]he request for a consent to search is . . . more analogous to a request for other types of physical evidence, such as handwriting exemplars, blood samples, and the like . . . . As in those situations, the accused can have a meaningful confrontation of the evidence against him through the ordinary trial processes." *Id.*

District courts have considerable discretion in formulating jury instructions, so long as the charge as a whole accurately reflects the law in the context of a case's facts. *United States v. Lopez*, 590 F.3d 1238, 1247-48 (11th Cir. 2009). "A challenged supplemental jury instruction is reviewed as part of the entire jury charge, in light of the indictment, evidence presented and argument of counsel to determine whether the jury was misled and whether

the jury understood the issues." *Id*. at 1248 (quotation marks omitted). We will not reverse a conviction based on a jury charge unless "the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process." *Prather*, 205 F.3d at 1270 (quotation marks omitted).

"Evidence of flight is admissible to demonstrate consciousness of guilt" from which a jury can infer actual guilt. *United States v. Blakey*, 960 F.2d 996, 1000 (11th Cir. 1992). This Circuit's pattern jury instructions for evidence of flight, which the district court gave in this case, include an instruction for the jury to draw an inference as to the defendant's guilt, stating that:

> Intentional flight or concealment by a person during or immediately after a crime has been committed, or after a person is accused of a crime, is not, of course, sufficient in itself to establish the guilt of that person. But intentional flight or concealment under those circumstances is a fact that, if proved, may be considered by the jury in light of all the other evidence in the case in determining the guilt or innocence of that person.

Eleventh Circuit Pattern Jury Instructions (Criminal Cases) S19.

The record here demonstrates that the district court did not plainly err by allowing the jury to draw an adverse inference of guilt from Gonzalez's refusal to provide his DNA even though his counsel was not present. When the government requested Gonzalez's DNA sample, it was not a critical stage in the criminal prosecution, and Gonzalez did not have a right to counsel.

Additionally, the district court did not plainly err in giving the jury instruction because the court properly supplemented this Circuit's flight instructions with the language reflecting the context of the case, to which Gonzalez did not object. Hence, Gonzalez's argument does not merit relief.

## II.

The Federal Rules of Criminal Procedure provide that a motion to suppress evidence must be made before trial. Fed. R. Crim. P. 12(b)(3)(C). "[W]hen a party fails to establish good cause for an untimely motion under [Rule 12], the issue in the motion is not preserved and our review is limited to a plain-error analysis." *United States v. Andres*, 960 F.3d 1310, 1315 (11th Cir. 2020). "Plain error requires the defendant to show: (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Patterson*, 595 F.3d 1324, 1326 (11th Cir. 2010). An error is plain if "the legal rule is clearly established at the time the case is reviewed on direct appeal." *United States v. Hesser*, 800 F.3d 1310, 1325 (11th Cir. 2015). If the explicit language of a statute or rule does not resolve an issue, plain error lies only where this Court's or the Supreme Court's precedent directly resolves it. *United States v. Moore*, 22 F.4th 1258, 1266 (11th Cir. 2022).

A search conducted without a warrant is usually presumptively unreasonable. *United States v. Yarbrough*, 961 F.3d 1157, 1163 (11th Cir. 2020). However, there are several established exceptions to the warrant requirement. The following two exceptions are

implicated by the facts of this case: (1) an inventory search pursuant to standardized procedures ("inventory exception"), *see United States v. Khoury*, 901 F.2d 948, 957-59 (11th Cir. 1990); and (2) a search of a vehicle incident to a lawful arrest of a recent occupant ("search incident to arrest exception"), *see Arizona v. Gant*, 556 U.S. 332, 343-44, 129 S. Ct. 1710, 1719 (2009).

An inventory search is the search of property lawfully seized and detained, to secure items of the owner's property, to protect against claims or disputes over lost or stolen property, and to provide protection to law enforcement. *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S. Ct. 3092, 3097 (1976). While "police generally need a warrant to conduct a search, they do not need a warrant to search an impounded car if they (1) had the authority to impound the car, and (2) followed department procedures governing inventory searches." *United States v. Isaac*, 987 F.3d 980, 988 (11th Cir. 2021). "An officer has the authority to impound a car if his decision to impound it is in good faith, based upon standard criteria, and not solely based upon suspicion of evidence of criminal activity." *Id.* at 988-89 (quotation marks omitted). "If the vehicle has been lawfully impounded, the law enforcement officer may conduct an inventory search, including a search of closed containers, provided the search is conducted pursuant to standardized criteria." *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992).

Because Gonzalez did not timely move to suppress the evidence found in his car without good cause, plain-error review applies. We conclude that the district court did not plainly err by

admitting the evidence obtained during the search of Gonzalez's vehicle because the inventory search and search-incident-to-arrest exceptions to the warrant requirement applied and allowed the officers to seize such evidence. *See Arizona v. Gant*, 556 U.S. at 347, 129 S. Ct. at 1721 (noting that, if there is probable cause to believe a vehicle contains evidence of criminal activity, the officer may conduct a search of any area of the vehicle in which the evidence might be found). Thus, Gonzalez is not entitled to relief on this claim.

## III.

Gonzalez next contends that, even under plain-error review, the district court deprived him of a fair and just trial because of the cumulative errors it committed. The cumulative error doctrine "provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005) (quotation marks omitted). We assess cumulative-error claims by "first considering the validity of each claim individually, and then examining any errors . . . in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012).

The record here demonstrates that the district court did not commit reversible cumulative error. "This Court has made clear that where there is no error in any of the trial court's rulings, the

argument that cumulative trial error requires that this Court reverse the defendant's convictions is without merit." *Id.* (quotation marks and brackets omitted). We conclude that none of the challenged evidence was erroneously admitted, and the jury instruction was proper, so there are no errors to aggregate. As such, Gonzalez 's argument does not merit relief.

## IV.

Finally, regarding his conviction, Gonzalez argues that the district court abused its discretion by denying his three requests for substitute counsel. *See United States v. Joyner*, 899 F.3d 1199, 1205 (11th Cir. 2018) (reviewing for abuse of discretion the district court's order denying motion to discharge appointed counsel). Specifically, Gonzalez claims that he showed good cause for his lawyer to be discharged because his lawyer did not move to suppress the evidence found in his car, did not object to the government's requested jury instruction, and was not present when the government sought his DNA.

Under the Sixth Amendment of the United States Constitution, all criminal defendants are entitled to the assistance of counsel. U.S. Const. amend. VI. However, the Sixth Amendment does not grant defendants the unqualified right to counsel of their choice or the right to demand a different appointed counsel except for good cause. *United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir. 2008) (*en banc*). "Good cause in this context means a fundamental problem, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an

apparently unjust verdict." *Id.* (quotation marks omitted).  A "general loss of confidence or trust" in counsel, by itself, does not constitute good cause.  *Joyner*, 899 F.3d at 1206 (quotation marks omitted).

When considering a district court's denial of a motion for new counsel, we consider several factors, including (1) the timeliness of the motion, (2) the adequacy of the district court's inquiry into the merits of the motion, and (3) whether the conflict was so great that it resulted in a total lack of communication between the defendant and his counsel, thereby preventing an adequate defense. *United States v. Calderon*, 127 F.3d 1314, 1343 (11th Cir. 1997). In addition, to merit reversal, the defendant must show that the district court's denial of his motion for new counsel was prejudicial. *Id.* "To successfully demonstrate prejudice, [Gonzalez] must show that counsel's performance was not within the range of competence demanded of attorneys in criminal cases and that but for counsel's continued representation . . . the result of the proceeding would have been different." *Id.* (quotation marks omitted).  If the defendant cannot show prejudice, any error on the part of the district court in denying the motion was harmless. *Id.*

The record demonstrates that the district court did not abuse its discretion by denying Gonzalez's motions for substitute counsel because Gonzalez failed to establish good cause for the substitution.  The motions were untimely, and the district court heard arguments on Gonzalez's first and third requests for new counsel.  Moreover, the magistrate judge held a separate hearing

on Gonzalez's second motion, giving Gonzalez the opportunity to explain his concerns.  In addition, there is nothing in Gonzalez's motions to indicate that he and his counsel were unable to communicate in a manner that would allow for effective representation.  Even if we found that the district court abused its discretion, Gonzalez is unable to show that he was prejudiced by the court-appointed attorney continuing to represent him.  In the absence of demonstrable prejudice, we affirm the district court's order denying Gonzalez's motion for substitute counsel.

## V.

We typically review *de novo* the district court's interpretation of the Sentencing Guidelines and the application of the Guidelines to the facts of the case, *United States v. Dougherty*, 754 F.3d 1353, 1358 (11th Cir. 2014), but review for plain error a sentencing challenge raised for the first time on appeal, *United States v. Henderson*, 409 F.3d 1293, 1307 (11th Cir. 2005).  Moreover, when a defendant fails to object to the conditions of his supervised release at sentencing, we review his argument for plain error.  *See United States v. Zinn*, 321 F.3d 1084, 1087 (11th Cir. 2003).  But when a defendant had no opportunity to object at sentencing because the conditions were included for the first time in the written judgment, we review the issue *de novo*.  *United States v. Rodriguez*, 75 F.4th 1231, 1246 n.5 (11th Cir. 2023).

Under § 2K2.1, the Guideline for unlawful possession of firearms or ammunition prescribes a base offense level of 20 if the offense involved a "semiautomatic firearm that is capable of

accepting a large capacity magazine." U.S.S.G. § 2K2.1(a)(4)(B)(i)(I).  According to the commentary, a "semiautomatic firearm that is capable of accepting a large capacity magazine" means

> a semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of the offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm.

U.S.S.G. § 2K2.1, comment. (n.2).

Four levels are added to the base offense level for a firearm-possession offense if the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B).  The four-level enhancement can be applied "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, comment. (n.14).

The United States Sentencing Guidelines § 2K2.4 addresses violations of 18 U.S.C. § 924(c), and its commentary provides that "[i]f a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of

an explosive or firearm when determining the sentence for the underlying offense." U.S.S.G. § 2K2.4, comment. (n.4). That means that "when a defendant is convicted of a § 924(c) violation and an underlying offense, the defendant's possession of a weapon cannot be used to enhance the level of the underlying offense." *United States v. Diaz*, 248 F.3d 1065, 1107 (11th Cir. 2001) (emphasis omitted). In applying an earlier version of § 2K2.1(b)(6)(B), we held that applying the enhancement to a defendant's § 922(g) conviction based on possessing a firearm in connection with drug trafficking punished him twice for the same wrong when he was also sentenced for his § 924(c) conviction for possessing a firearm in connection with drug trafficking. *United States v. Brown*, 332 F.3d 1341, 1346 (11th Cir. 2003).

To satisfy the Fifth Amendment's Due Process Clause, "the district court must pronounce the sentence, giving the defendant notice of the sentence and an opportunity to object." *Rodriguez*, 75 F.4th at 1247 (quotation marks omitted). "Due process concerns arise when a district court's in-court pronouncement of a sentence differs from the judgment that the court later enters." *Id.* Accordingly, in *Rodriguez*, we concluded that "due process principles generally require a court to pronounce at the sentencing hearing discretionary, but not mandatory, conditions of supervised release." *Id.* A district court is not required to list each discretionary condition individually if it expressly incorporates a written list detailing those conditions, *e.g.*, from a standing order or the defendant's PSI. *Id.* at 1246, 1249.

The government concedes on appeal that the district court plainly erred by enhancing Gonzalez's sentencing guideline range for possessing a large capacity magazine because the firearm found in his vehicle did not meet the Guidelines commentary definition for possessing a large capacity magazine. Further, as the government concedes, the district court plainly erred in imposing a four-level enhancement to Gonzalez's sentence for possessing a firearm in connection with another felony because the enhancement punishes him twice for the same wrong of possessing a firearm in connection with the underlying felony of drug trafficking. Lastly, as the government concedes, the district court plainly erred in imposing standard conditions of supervised release because its oral pronouncement failed to reference any list of those standard conditions.

Accordingly, based on the record and the government's concessions, we affirm Gonzalez's convictions, but vacate his total sentence of 130 months' imprisonment and remand the case for resentencing consistent with this opinion.

**CONVICTIONS AFFIRMED; TOTAL SENTENCE VACATED AND REMANDED FOR RESENTENCING.**